## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

JENNIFER MARLIANA LAND,

      Petitioner,

v.                               Case No. 5:21-cv-10-TKW/MJF

RICKY D. DIXON,[1]

      Respondent.

_____/

## ORDER and
## REPORT AND RECOMMENDATION

      Petitioner Jennifer M. Land has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 12. Land replied. Doc. 14. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Land is not entitled to habeas relief.[2]

---

[1] Ricky D. Dixon succeeded Mark Inch as Secretary of the Florida Department of Corrections, and is automatically substituted as Respondent. Fed. R. Civ. P. 25(d).

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.  BACKGROUND FACTS AND PROCEDURAL HISTORY

On September 28, 2016, a Florida jury found Land guilty of Dealing in Stolen Property as charged in Washington County Circuit Court Case No. 2015-CF-284. Doc. 12-1, Ex. A at 43.[3] Land's conviction was based on the following trial evidence, viewed in the light most favorable to the State. Doc. 12-1, Ex. B (Trial Tr.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).[4]

The victim in this case, Nicholas Bailey, owned a home-remodeling and landscaping business with his business partner. Land and her boyfriend, Chad Morris, performed landscaping work for Bailey's business and at Bailey's residence. Occasionally when Land was at Bailey's residence doing landscaping, Bailey's pickup truck—which had a dog box in the bed—was on the property and viewable by Land. Shortly before March 2015, Bailey's business partner fired Land and Morris.

---

[3] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 12. The citation references the docket entry number followed by the lettered exhibit. Citations to page numbers of an exhibit are to the Bates stamp number appearing at either the bottom left corner of the page, or the bottom center of the page.

[4] Land does not challenge the sufficiency of the evidence to support her conviction. The undersigned describes the trial evidence to provide context for her ineffective-assistance-of-trial-counsel claims.

In March 2015, Bailey returned from a vacation to find that his home had been burglarized and his F-350 truck—which contained the dog box and other items—had been stolen. Bailey described the dog box as customized to include an extended water spout and a side box to hold weapons. *See* Doc. 12-2, Ex. D at 375-82 (Tr. Exs. - Photographs). Bailey had purchased the dog box for between $800 and $1,000.

Bailey called the police and reported the theft. Bailey identified Morris as a suspect. Bailey also showed the investigator (Captain Mark Collins) a picture of his truck containing the dog box.

Approximately six months after the burglary, on September 18, 2015, Bailey was looking on the internet site "Craigslist" for a replacement dog box. Bailey stumbled upon an advertisement selling his stolen dog box. Bailey took a screenshot of the advertisement and sent it to the police. Bailey eventually recovered his truck and the dog box.

Captain Mark Collins testified that after responding to the burglary in March 2015, he did not have enough evidence to make an arrest. On June 9, 2015, Collins executed a search warrant at Morris's home. Land also lived in that home. Morris's home was approximately one mile from Bailey's home. Collins found Bailey's property inside Morris's home. Morris then led Collins and other officers to Bailey's truck, which was concealed deep in a wooded area. The dog box was not in the truck.

Land arrived while the police were executing the search warrant and she became aware that Bailey's property and truck were seized from the home and nearby wooded area. Land was wearing boots that belonged to Bailey, which she surrendered to Captain Collins. As Collins was leaving Morris's home, he told Land that the police still were looking for other missing property belonging to Bailey, and that "should she have any contact with any property or anything of any nature, before she did anything with it, to give me a call." Doc. 12-1, Ex. B at 281-82.

After Bailey contacted Collins on September 18, 2015 about the Craigslist advertisement, Collins located the advertisement, which stated:

> DIAMOND DELUXE T-STYLE "cadillac" of all dog boxes. Has tool boxes on both sides with water tank in between for your added convenience.
>
> Fits full size truck bed. Paid $1500 asking only $800/obo.

Doc. 12-2, Ex. D at 386.

 Collins obtained an address for the person selling the dog box. Collins drove to that address and found Bailey's dog box in plain view in the back of a pickup truck. Collins made contact with the people inside that residence: Phillip Roberts and January Temenbaum.

Phillip Roberts testified that Land brought the dog box to his home. As far as Roberts knew, the box belonged to Land. Roberts, Temenbaum, and Land took the

dog box to a flea market in Alabama to try to sell it. Roberts was helping Land because she needed money to pay her power bill.

January Temenbaum testified that she and Roberts were engaged to be married and that she and Land were friends. In September 2015, Land asked Temenbaum for her help in selling a dog box. Land did not tell Temenbaum where she obtained the box or that it was stolen. Temenbaum, Land, and Roberts took the dog box to a flea market in Alabama, but they were unable to sell it. Temenbaum suggested to Land that she advertise the box on Craigslist. Temenbaum and Land took pictures of the box and Temenbaum posted the advertisement on Craigslist. Land told Temenbaum that she could not post the advertisement because she did not have internet service at her home. Land also told Temenbaum that she needed money from the sale of the box to pay her electric bill because her power was being turned off.

After Captain Collins spoke with Roberts and Temenbaum, he seized the dog box and made contact with Land. Land waived her *Miranda* rights and gave a statement to Collins.

In her statement, Land told Collins that Morris had three dog boxes back in 2011; that he gave two of them to his dad; and that the third one was kept at Land's mother's home behind a shed. Land said that after Morris left the residence in June

2015, she found herself in a financial bind and was selling anything and everything to pay her bills. Land stated that she took the dog box to the flea market but was not able to sell it. Land feared that her electricity was going to be disconnected for nonpayment, so she asked Temenbaum to post an advertisement on Craigslist. Land stated that she could not post the advertisement herself because she did not have internet service. Land explained to Collins: "That's the only reason why, I mean, I took to Sadie's [flea market] and I was trying to sell it myself at Sadie's, but I just did not have internet to be able to post i[t] online." Doc. 12-1, Ex. B at 271.

Land claimed that she did not know the dog box was stolen. When Captain Collins confronted Land with the fact that he viewed her Facebook page that day and saw that she updated her cover photograph three days prior, Land told him that she used her phone to make the update. Land admitted that she had internet service on her phone. Collins testified that internet service was necessary to access Facebook.

Collins testified on cross-examination that he gets upset when people he interviews lie to him. It was evident to him that Land lied to him when she told him that she did not have internet service.

Defense counsel elicited testimony from Bailey that although his dog box was customized and he could recognize it, there was no serial number on it and there

were similar-looking dog boxes in the area where he lived. Counsel elicited testimony from Roberts and Temenbaum that the dog box Land tried to sell looked to them like an ordinary dog box.

After the State rested, defense counsel moved for a judgment of acquittal. The trial court denied the motion. Land chose not to testify.

After the jury returned its verdict, the trial court adjudicated Land guilty of Dealing in Stolen Property and sentenced her to 10 years of imprisonment. Doc. 12-1, Ex. A at 86-94 (J. & Sentence). The Florida First District Court of Appeal ("First DCA") affirmed the judgment and sentence *per curiam* and without written opinion. *Land v. State*, 239 So. 3d 1193 (Fla. 1st DCA Feb. 15, 2018) (Table) (copy at Doc. 12-2, Ex. H).

After unsuccessfully challenging her sentence, Land filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which she twice amended. Doc. 12-3, Ex. P at 267-84 (Second Am. Mot. for Postconviction Relief), and 285-94 (Mem.). The state circuit court summarily denied relief. Doc. 12-3, Ex. Q at 3-251. The First DCA affirmed *per curiam* and without written opinion. *Land v. State*, 298 So. 3d 556 (Fla. 1st DCA July 2, 2020) (copy at Doc. 12-3, Ex. T). The mandate issued July 30, 2020. Doc. 12-3, Ex. U.

Land filed her *pro se* federal habeas petition on January 11, 2021, raising four claims. Doc. 1. The parties agree that Land exhausted her state remedies by presenting all of her claims to the state courts in her Rule 3.850 proceeding. Doc. 1 at 14; Doc. 12 at 13. The State asserts that Land is not entitled to habeas relief because she fails to satisfy § 2254(d)'s demanding standard. Doc. 12 at 18-56.

## II. Relevant Legal Principles

### A.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable

---

[5] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v.*

Page 9 of 39

*Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## B.    Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### III.    DISCUSSION

**Ground One**        **"Violation of Petitioner's 6th Amendment Right to Effective Assistance of Counsel for Failure to Object to Prosecutor's Prejudicial Statement" Doc. 1 at 6.**

Land alleges that her trial counsel was ineffective because he failed to object to improper and prejudicial remarks by the prosecutor during rebuttal closing argument. The challenged remarks are emphasized in bold:

What's the big deal about this internet? The big deal is that you heard her statement, she was Mirandized and she was sworn and she was under oath. She was talking to a law enforcement officer about a dog box that she had put into the hands of friends, asking her to help her sell it, and she's being asked question[s] by law enforcement, and **she is making untrue statements. That's the big deal**.

She's under oath as part of an investigation, being questioned about stolen property after just three months ago the police were out at her house looking for stolen property, and she tells them, "Well, I don't have any internet." He shows her or talks about the page and says, you know, "Hey, you updated this just three days ago."

**Then she goes on to say that the dog box had been behind my mom's house since 2011. Impossible. Impossible that it's been behind the house since 2011, okay? So, ask yourselves why would somebody, who is being questioned by law enforcement about something that's this important, would make, obviously, untrue statement. The answer is because she knew full well that that dog box was stolen.**

Her live-in boyfriend at the time is the one who stole it from their former employer. So, she knew it was stolen and she was trying to distance herself from that item and from the crime.

Doc. 12-1, Ex. B at 338-39 (emphasis added).

Land asserts that defense counsel should have objected because the comments (1) were pejorative, (2) shifted the burden of proof to the defense, and (3) were expressions of the prosecutor's personal beliefs "including those about which witness is telling the truth." Doc. 1 at 6-7.

## A.    The State Court's Decision

Land presented this claim to the state courts as Ground One of her second amended Rule 3.850 motion. Doc. 12-2, Ex. P at 272-73. The state circuit court identified the two-pronged *Strickland* standard as the controlling legal standard, Doc. 12-3, Ex. Q at 4, and denied relief as follows:

> In **Ground One**, Defendant alleges that counsel was ineffective for failing to object to the prosecutor's prejudicial statement in closing arguments *See* Transcript of Trial held September 28, 2016, at pp 141-142.
>
> However, the Defendant's allegations fail to establish either prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, Defendant's allegations are conclusory in nature to warrant relief. *See Kennedy v. State*, 547 So. 2d 912 (Fla. 1989) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial was ineffective and then expect to receive an evidentiary hearing."). Since the Defendant was provided an opportunity to amend this ground, Defendant's ground is due to be denied with prejudice. *See Nelson v. State*, 977 So. 2d 710 (Fla. 1st CA 2008).
>
> Next, issues of prosecutorial misconduct, insufficiency of the evidence, and trial court error are not cognizable under Rule 3.850. *See Johnson v. State*, 985 So. 2d 1215 (Fla. 1st DCA 2008); *see also Swanson v. State*, 984 So. 2d 629 (Fla. 1st DCA 2008) citing *Hodges v.*

*State*, 885 So. 2d 338, 366 (Fla. 2004) (holding that claims of trial court error should be raised on direct appeal, not in a rule 3.850 motion); *McCray v. State*, 933 So. 2d 1226 (Fla. 1st DCA 2006).

Moreover, challenges to the sufficiency of the evidence was an issue for direct appeal, and therefore not cognizable under Rule 3.850. See *Childers v. State*, 782 So. 2d 946 (Fla. 4th DCA 2001); *Betts v. State*, 792 So. 2d 589 (Fla. 1st DCA 2001); *Williams v. State*, 642 So. 2d 67 (Fla. 1st DCA 1994).

Despite the foregoing, Defendant's claim is without merit and he [sic] is unable to demonstrate prejudice. The law is clear that [a prosecutor's] attacks on defense counsel are highly improper and impermissible, and thus a prosecutor's personal attacks on the defendant or his or her counsel may furnish grounds for a new trial. See 15 A Fla. Jur 2d Criminal Law—Procedure 2225, *Personal attacks by prosecutor on defendant or defense counsel as grounds for a new trial*. Further it is "unquestionably improper" for a prosecutor to state that the defendant has lied. See *Washington v. State*, 687 So. 2d 279, 280 (Fla. 2nd DCA 1997) (quoting *O'Callaghan v. State*, 429 So. 2d 691, 696 (Fla. 1983). However, courts have held that where such commentary is supported by the evidence, there will be no reversal. See, e.g. *Lugo v. State*, 845 So. 2d 74, 107-108 (Fla. 2003) (holding that where the evidence substantially proved the defendant's deceitful actions, the prosecutor's remarks calling into question the defendant's veracity were nothing more than appropriate comments on the evidence). In this case, the prosecutor's comments refer to Defendant's testimony to law enforcement via a Mirandized statement she swore to under oath as part of an investigation into this case. When considered in context, the prosecutor did not call Defendant a liar, as she was commenting on the evidence. Defendant's claim is meritless. See e.g., *Zack v. State*, 911 So. 2d 1190 (Fla. 2005). Therefore, the Defendant failed to demonstrate prejudice and his [sic] ground is due to be denied.

Doc. 12-3, Ex. Q at 4-5. The First DCA summarily affirmed in an unexplained opinion. Doc. 12-3, Ex. T.

## B.    Land's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of Land's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Land's claim for the reasons provided by the state circuit court.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See*

*Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Land must show that the state court's application of the *Strickland* standard was unreasonable.

In reviewing the reasonableness of the state court's decision, this court defers to the state court's factual findings, because they are amply supported by the record and because Land has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

Given the state court's factual findings and the trial transcript, fairminded jurists could concur in the state court's conclusion that Land failed to establish prejudice under *Strickland*. The prosecutor's initial closing argument discussed the element of whether Land knew that the dog box was stolen. The prosecutor suggested questions that the jurors could ask themselves to answer that question. Doc. 12-2, Ex. B at 325-29.

In referencing Land's story to Captain Collins that the dog box she attempted to sell had been kept behind her mother's house since 2011, the prosecutor stated:

> Well, that's impossible because it just got stolen back in 2015, so it hasn't been back there since 2011. So, members of the jury, I would

Page 18 of 39

> ask you not to throw your common sense out the window, okay? This
> is certainly a situation where she knew or should have known that that
> item was stolen property, and she shouldn't have been trying to sell or
> dispose of it in any way.

*Id*. at 329. The prosecutor also pointed out that the Craigslist advertisement itself

was dishonest. The prosecutor stated: "The ad itself says, 'Paid 1,500-dollars, only

asking 800-dollars or best offer.' Who paid 1,500-dollars? Not her, she didn't

because it's not her dog box." *Id*. at 328.

Defense counsel asserted in closing argument that six months had passed

between the burglary and the attempted sale of the dog box on Craigslist, negating

any conclusion of "recently stolen." Defense counsel explained:

> If you're caught in possession of something that was stolen yesterday
> or last week, you got some explaining to do. How did you come into
> possession of that property that was recently stolen? If you're in
> possession of something six months after it was stolen, does that prove
> anything?

Ex. B at 331. Defense counsel urged the jury to find that Land gave a reasonable

explanation for her possession of the box in her statement to Captain Collins. *Id*. at

331. Counsel reminded the jurors that Land testified to Collins that her boyfriend

had three dog boxes, two of which he had given to his father and one which he left

behind Land's mother's house since 2011. Counsel added, "She may have been

mistaken about that." *Id*. at 332. Counsel suggested that Land may have confused

the dog box, and that "Chad Morris may have put that dog box in her mother's

backyard for all we know, the one he's accused of stealing." *Id*. at 332-33. Counsel reminded the jurors that Captain Collins never told Land that a dog box, in particular, was still missing from the burglary. *Id*. at 334-35. The prosecutor's rebuttal followed.

A fairminded jurist could concur in the state court's conclusion that Land's proposed objection to the prosecutor's remarks was meritless. "A prosecutor is expected to refrain from offering h[er] personal views on a defendant's guilt or on the evidence. Yet, a prosecutor is free to suggest during oral argument what the jury should conclude from the evidence before it." *United States v. Rivera*, 780 F.3d 1084, 1100 (11th Cir. 2015); *see also Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (a prosecutor may argue both facts in evidence and reasonable inferences from those facts); *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984) ("[A]n attorney's statements that indicate his opinion or knowledge of the case as theretofore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence."); *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983) (a

prosecutor may voice a personal opinion as long as she indicates that her belief is based on evidence in the record).[6]

The prosecutor's remarks were made in the context of the evidence adduced at trial, and they advocated for a conclusion that reasonably could be drawn from the evidence. The remarks referred directly to the charges against Land, not to a character trait that was ancillary to or unsupported by the evidence. And the remarks were a fair reply to defense counsel's urging the jury to reach the conclusion that Land did not know the dog box was stolen.

"It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained." *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019); *Chandler v. Moore*, 240 F.3d 907, 914 (11th Cir. 2001) (defense counsel could not be deemed ineffective for failing to object to prosecutor's comments where prosecutor properly commented on the evidence, and none of the

---

[6] Florida's standard for reviewing prosecutorial comments is essentially the same as the federal due process standard. If the two standards were different, there would be an additional basis to deny habeas relief on Land's claim. Federal courts reviewing an ineffective assistance claim grounded in counsel's failure to make a state-law based objection, must defer to the state court's determination of state law. *See, e.g., Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005); *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that [trial] counsel failed to raise turns on state law." (citation omitted)).

comments rose to the level of fundamental error); *see also Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) (holding that habeas petitioner could not possibly have suffered *Strickland* prejudice where the objection that was not made would have been futile); *Stephens v. Sec'y, Fla. Dep't of Corr.*, 678 F.3d 1219, 1227 (11th Cir. 2012) (rejecting ineffective-assistance claim where prosecutor's comments were not improper).

The state court's rejection of Land's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Land is not entitled to habeas relief on Ground One.

**Ground Two**       **"Violation of Petitioner's 6th Amendment Rights to Effective Assistance of Counsel for Failure to Ensure Fair and Impartial Trial." Doc. 1 at 8.**

Land alleges that trial counsel was ineffective for failing to use peremptory challenges to strike three jurors: Ms. Cope, Ms. Williams, and Ms. Boyett. The reason Land posits for striking these jurors is that they had "social and/or personal relationships to either each other or a person involved in the prosecution of the case." Doc. 1 at 9. Land theorizes that had counsel struck these three jurors, the following prospective jurors would have been seated in their place: Matthew Hernandez (#45), Rondreeka Campbell (#46), and Michael Scholten (#47). Land maintains that the latter prospective jurors were "ideal candidates for any jury selection" because they

"did not know anyone involved in either the case or the voir dire proceedings, had never been involved in a criminal trial, and knew no law enforcement personnel." *Id*. at 9.

Land claims that she was prejudiced by counsel's error because:

[T]rial counsel's failure to seat an impartial jury denied her the opportunity to a fair trial. Denial of Ms. Land's right to an impartial jury constitutes fundamental error, and as such, requires relief in one of two forms: the conviction and judgment be vacated and this cause remanded for a new trial; or in the alternative, the court should hold an evidentiary hearing on the merits of her claims.

*Id*. at 9.

## A.  State Court's Decision

Land presented this claim to the state courts as Ground Two of her second amended Rule 3.850 motion. Doc. 12-2, Ex. P at 274-78. The state circuit court identified the two-pronged *Strickland* standard as the controlling legal standard and denied relief for the following reasons:

In **Ground Two**, Defendant alleges that counsel was ineffective for failing to ensure she was tried by a fair and impartial jury of her peers.FN2

FN2   *See* Transcript of Jury Selection held September 26, 2016, at pg 68-69 (Defendant agreed with the jury composition)

However, the Defendant's allegations fail to establish either prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, Defendant's allegations are conclusory in nature to warrant relief. *See*

Page 23 of 39

*Kennedy v. State*, 547 So. 2d 912 (Fla. 1989) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial was ineffective and then expect to receive an evidentiary hearing."). Since the Defendant was provided an opportunity to amend this ground, Defendant's ground is due to be denied with prejudice. <u>See</u> *Nelson v. State*, 977 So. 2d 710 (Fla. 1st CA 2008).

Further, counsel's alleged failure to exercise a cause challenge or a peremptory challenge to strike a prospective juror is subject to the prejudice standard set forth in *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007). <u>See</u> *Troy v. State*, 547 So. 3d 828, 837 (Fla. 2011). In *Carratelli*, the Florida Supreme Court described this standard as follows:

> We therefore hold that where a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased.

> A juror is competent if he or she "can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." *Lusk*, 446 So. 2d at 1041. Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror. *See United States v. Wood*, 299 U.S. 123, 133-34, 57 S. Ct. 177, 81 L. Ed. 78 (1936) (stating, in a case involving a statute permitting government employees to serve as jurors in the District of Columbia, that the defendant in a criminal case still has the ability during voir dire to "ascertain whether a prospective juror ... has any bias in fact which would prevent his serving as an impartial juror"). Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial-i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record. *See Carratelli II*, 915 So. 2d at 1260 (citing *Jenkins*, 824 So. 2d at 982); *see also Patton v.*

*Yount*, 467 U.S. 1025, 1038-40, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984) (stating that in habeas review a state court's findings are presumed correct and that although the record showing the ambiguous voir dire answers of three jurors challenged for cause "arouses some concern, only the trial judge could tell which of these answers was said with the greatest comprehension and certainty").

*Carratelli*, 961 So. 2d at 324.

In the instant case, the Defendant cannot meet the high burden set forth above. Under the actual bias standard, "the defendant must demonstrate that the juror in question was not impartial—i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record." *See Carratelli*, 961 So. 2d at 324. Further, the prospective jurors were asked if they could weigh the testimony of each witness and follow the law, and be fair and impartial to both sides. (*See* attached Transcript of Jury Selection). *See also Davis v. State*, 892 So. 2d 1073 (Fla. 2nd DCA 2004) citing *Williams v. State*, 673 So. 2d 960, 961 (Fla. 1st DCA 1996) ("trial court attached a copy of the entire voir dire, which conclusively refute[d] appellant's suggestion of improper bias among the three specified jurors."). Based upon the foregoing, the Defendant fails to demonstrate deficient performance by counsel or resulting prejudice as to this ground. Therefore, defendant's allegations are denied.

Doc. 12-3, Ex. Q at 5-6. The First DCA summarily affirmed. Doc. 12-3, Ex. T.

## B.     Land's Claim Does Not Warrant Habeas Relief

The Eleventh Circuit has held that "*Carratelli*'s actual bias test is arguably

consistent with *Strickland*." *Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1201 (11th

Cir. 2012). The court explained in *Owen*:

To "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

Page 25 of 39

different," [a petitioner] must show that at least one juror was biased; if no juror were biased, then there is no "reasonable probability that . . . the result of the proceeding would have been different."

686 F.3d at 1201 (quoting *Strickland*, 466 U.S. at 694).

The court in *Owen* ultimately did not decide whether the *Carratelli* actual-bias test for prejudice imposed a higher burden or contradicted the *Strickland* prejudice standard, because Owen's claim failed on *de novo* review. As in *Owen*, this court need not decide whether the *Carratelli* standard is contrary to the *Strickland* standard, because Land's claim fails even on *de novo* review.

Land relies on the transcript of voir dire to support her claim that Cope, Williams and Boyett were biased. *See* Doc. 1 at 8. Land's claim of bias is predicated on the following: (1) Cope and Boyett were neighbors; (2) Cope and Williams were friends; (3) Cope was a retired teacher from Chipley High School and taught Captain Collins in a class; (4) Cope previously served on a jury on a case tried by the same prosecutor (ASA Jefcoat); (5) Cope's first cousin was a victim in a prior case prosecuted by ASA Jefcoat; (6) Cope thought Ms. Land looked familiar and that she knew her from Chipley High School, but did not have any specific recollection; (7) Williams was a classmate of Captain Collins's in high school; (8) Boyett previously served on a jury in a criminal case; and (9) Boyett's brother was a correctional officer

and part-time law enforcement officer. *See* Doc. 1 at 8 (referring to the allegations of her Rule 3.850 motion at Doc. 12-2, Ex. P at 274-77).

The undersigned has reviewed the transcript of voir dire. Doc. 12-1, Ex. B at 125-96. Cope, Williams and Boyett answered all of the prosecutor's and defense counsel's questions in a manner indicative of an unbiased juror. Each of them indicated that they could be a fair and impartial juror and that they could decide the case based solely on the law and the evidence presented at trial. *Id*. at 165-69, 172-79, 181-85.

Cope, Williams and Boyett each testified that their respective relationships with each other would not influence their decision, or their decision-making process, in any way. *Id*. at 153-54, 157. Incidentally, this circumstance that Land claims showed bias (Cope's, Williams's and Boyett's acquaintance with each other) was a circumstance that existed with Mr. Hernandez as well (one of the jurors Land states she would have preferred). Mr. Hernandez knew another juror, Ms. Jones. Doc. 12-1, Ex. B at 158.

Additionally, in those instances where Cope indicated that she was familiar with Collins, Jefcoat, and possibly Land, she was questioned further and stated that that circumstance would not affect her ability to be impartial, and that it would not influence her decision or decision-making process in any way. *Id*. at 151, 152, 169.

Cope also testified that having taught Collins would neither sway her opinion concerning his testimony, nor influence her decision in the case. *Id*. at 169. Ms. Williams gave the same response when questioned about having attended high school with Collins. *Id*. at 169-70.

Boyett testified that nothing about her relationship with her brother or his work in law enforcement would influence her decision in the case. *Id*. at 160.

Before the defense accepted the proposed jury, defense counsel conferred with Land and announced that the defense was "okay with those six." *Id*. at 192. The trial judge personally confirmed with Land that she was satisfied with the make-up of the jury:

> THE COURT:  Ms. Land, you have been able to take short breaks to talk with Mr. Griffith about the selection process. Have you had enough time to confer with him about these jurors?
>
> JENNIFER MARLAINA LAND:  Yes, sir.
>
> THE COURT: Are you satisfied with the make-up of the jury as we discussed?
>
> JENNIFER MARLAINA LAND:  Yes, sir.
>
> THE COURT:  Any questions or concerns?
>
> JENNIFER MARLAINA LAND:  No, sir.

*Id*. at 193. Under the totality of the circumstances, Land's trial counsel reasonably could have chosen not to strike Cope, Williams, or Boyett.

Land's claim also fails to satisfy *Strickland*'s prejudice prong. Land offers nothing to support her conclusory statement that the result of her trial would have been different had counsel stricken Cope, Williams and/or Boyett. Speculation falls far short of satisfying *Strickland*'s prejudice standard. *See Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."); *see also, e.g., Wilson v. Sec'y, Fla. Dep't of Corr.*, 786 F. App'x 878 (11th Cir. 2019) (denying ineffective-assistance claim because petitioner failed to show that he was prejudiced by counsel's failure to pursue *Batson* challenge during jury selection; petitioner's only argument was that a more racially-balanced jury would have been less likely to convict him, but "conclusory argument falls short of showing a substantial likelihood of a different result.").

Land has not shown that trial counsel's failure to strike Cope, Williams and Boyett was objectively unreasonable, and that such failure actually prejudiced the defense. Land is not entitled to habeas relief on Ground Two.

**Ground Three**    **"Violation of Petitioner's 6th Amendment Rights to Effective Assistance of Counsel for Failure to Request a Jury Instruction to Include Lesser-Included Offenses" Doc. 1 at 10.**

Land alleges that trial counsel was ineffective for failing to request jury instructions on three "lesser-included" offenses: Grand Theft (a third-degree felony), Petit Theft (a first-degree misdemeanor), and Petit Theft (a second-degree

misdemeanor). Doc. 1 at 10.[7] Land further faults counsel for failing to object to the inclusion of a jury instruction regarding willful blindness. *Id*. at 12.

## A.    State Court's Decision

Land presented this claim to the state courts as Ground Three of her second amended Rule 3.850 motion. Doc. 12-2, Ex. P at 279-81. The state circuit court identified the two-pronged *Strickland* standard as the controlling legal standard and denied relief for the following reasons:

> In **Ground Three**, Defendant alleges that counsel failed to request a jury instruction for lesser included offense of Grand Theft.
>
> However, the Defendant's allegations fail to establish either prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, Defendant's allegations are conclusory in nature to warrant relief. *See Kennedy v. State*, 547 So. 2d 912 (Fla. 1989) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial was ineffective and then expect to receive an evidentiary hearing."). Since the Defendant was provided an opportunity to amend this ground, Defendant's ground is due to be denied with prejudice. *See Nelson v. State*, 977 So. 2d 710 (Fla. 1st CA 2008).
>
> Despite the foregoing, Defendant's claim is without merit. Defendant was not entitled to a jury instruction on theft, as a lesser included offense of dealing in stolen property, where the elements of theft were not charged. *See Neals v. State*, 962 So. 2d 926 (Fla. 4th DCA 2007); *see also* Section 812.019(1); 812.014, Florida Statutes; *see* attached charging document, Information filed October 27, 2015. Further, Defendant submits that counsel did not object to the State's

---

[7] Relating to these lesser offenses, Land also faults counsel for failing to "press" the victim "on the exact value of the dog box." *Id*. at 11.

request of a jury instruction for willful blindness. Defendant's claim is without merit. This issue was addressed during the charge conference. *See* Transcript of Trial held September 28, 2016, at pp 109-114, 116-117.

Moreover, issues of prosecutorial misconduct, insufficiency of the evidence, and trial court error are not cognizable under Rule 3.850. *See Johnson v. State*, 985 So. 2d 1215 (Fla. 1st DCA 2008); *see also Swanson v. State*, 984 So. 2d 629 (Fla. 1st DCA 2008) citing *Hodges v. State*, 885 So. 2d 338, 366 (Fla. 2004) (holding that claims of trial court error should be raised on direct appeal, not in a rule 3.850 motion); *McCray v. State*, 933 So. 2d 1226 (Fla. 1st DCA 2006). Further, challenges to the sufficiency of the evidence was an issue for direct appeal, and therefore not cognizable under Rule 3.850. *See Childers v. State*, 782 So. 2d 946 (Fla. 4th DCA 2001); *Betts v. State*, 792 So. 2d 589 (Fla. 1st DCA 2001); *Williams v. State*, 642 So. 2d 67 (Fla. 1st DCA 1994).

Finally, counsel is not ineffective for failing to file motions that have no merit. *See Magill v. State*, 457 So. 2d 1367 (Fla. 1984). While counsel may be ineffective for failing to investigate a valid defense, the defense in question must be viable. *See Panagiotakis v. State*, 619 So. 2d 345 (Fla. 2nd DCA 1993). Accordingly, counsel is not ineffective for failing to raise a meritless claims. *See Farina v. State*, 937 So. 2d 612, 619 n. 5 (Fla. 2006) (quoting *Teffeteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla. 1999) for the proposition that "Trial counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding.")). Post conviction relief cannot be based on speculation or possibility. *See Maharaj v. State*, 778 So. 2d 944, 951 (Fla. 2000). The Defendant has failed to identify any evidence that would have produced a different result in the proceeding. Finally, a defendant is not entitled to perfect or error-free counsel, only to reasonably effective counsel. *See Yarbrough v. State*, 871 So. 2d 1026, 1030 (Fla. 1st DCA 2004) (citing *Waterhouse v. State*, 522 So. 2d 341 (Fla. 1988)).

Doc. 12-3, Ex. Q at 7. The First DCA summarily affirmed. Doc. 12-3, Ex. T.

### B.     Land's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of Land's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state court's decision was not contrary to clearly established federal law, because the state court utilized the *Strickland* standard. To obtain habeas relief, therefore, Land must show that the state court's application of the *Strickland* standard was unreasonable.

The state courts determined—as a matter of state law—that Land was not entitled to instructions on grand and petit theft because the elements of theft were not charged. This court must defer to the state court's determination of that state-law issue. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir.2005) ("'It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Herring*, 397 F.3d at 1355)); *Sabillo v. Sec'y, Dep't of Corr.*, 355 F. App'x 346, 349 (11th Cir. 2009) (denying habeas relief on claim that counsel was ineffective for failing to

request jury instruction on lesser-included offense; "The state courts concluded that Sabillo was not entitled to an instruction about third degree murder based on the evidence at trial, and we defer to that conclusion.").

The state courts' conclusion that Land was not entitled to the jury instructions on theft shows that counsel's failure to request them was not deficient and that counsel's conduct caused no prejudice. *Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance.").

Land also cannot demonstrate prejudice because the jury concluded that the evidence proved beyond a reasonable doubt that she was guilty of the main accusation of Dealing in Stolen Property.[8] *See, e.g., Santiago v. Sec'y, Fla. Dep't of*

---

[8] In Florida, a jury may convict a defendant of a lesser-included offense "only if it decides that the main accusation *has not* been proved beyond a reasonable doubt." *Sanders v. State*, 946 So. 2d 953, 958 (Fla. 2006) (internal quotation marks omitted) (emphasis added). Under *Strickland*, this Court must presume that the jury in Land's trial acted in accordance to the law. *See Strickland*, 466 U.S at 694 ("[A] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law).

The jury in Land's trial concluded that the evidence proved beyond a reasonable doubt that she was guilty of Dealing in Stolen Property. Thus, even if the lesser-offense instructions had been given, the jury would not have been permitted

*Corr.*, 472 F. App'x 888, 888-89 (11th Cir. 2012) (holding that the state court reasonably applied *Strickland* to deny ineffective-assistance claim for counsel's failure to request instruction on lesser-included offense; "the jury would not have been permitted to convict [the defendant] of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses").

Land's claim regarding the willful blindness instruction is refuted by the record, as the state court determined. At the charge conference, the prosecutor requested that the willful blindness instruction be read to the jury. Doc. 12-1, Ex. B at 306. The judge entertained argument from counsel as to whether this instruction should be given, with defense counsel arguing against it. *Id*. at 306-11. The judge stated that he was not inclined to give the instruction, but that he would reconsider if the prosecutor provided additional case law to support the instruction. *Id*. at 311. Following a recess, the judge asked the prosecutor if she had any additional argument. *Id*. at 313. The prosecutor stated that she was unable to find any other case law than what she previously cited. *Id*. The judge ruled: "Then the ruling I had

_____

to convict her of any lesser-included offense. *Sanders*. 946 So. 2d at 958. An assumption that the jury would have used its power to pardon Land necessarily assumes that the jury would have disregarded the trial court's instructions. *See id*.

Page 34 of 39

announced earlier will stay in place." *Id*. at 313-14. The jury was not given the instruction on willful blindness. *Id*. at 318-23; 339-44.

Based on all of the foregoing, the state court's rejection of Land's ineffective-assistance claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Land is not entitled to habeas relief on Ground Three.

**Ground Four**      **"Violation of Petitioner's 6th Amendment Rights to Effective Assistance of Counsel for Cumulative Error" Doc. 1 at 13.**

Land's final ineffective-assistance claim asserts that the errors outlined in Grounds One through Three above, viewed cumulatively, prejudiced her and undermine confidence in the outcome of her trial. Doc. 1 at 13.

**A.      State Court's Decision**

Land presented this claim to the state circuit court as Ground Four of her second amended Rule 3.850 motion. Doc. 12-2, Ex. P at 282. The state circuit court denied relief for the following reasons:

> In **Ground Four**, Defendant alleges cumulative error. However, Defendant's claim of cumulative error does not warrant relief when each individual claim is without merit or procedurally barred. *See Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003) ("[W]here individual claims or error alleged are either procedurally barred or without merit, the claim of cumulative error must fail."); *See also Downs v. State*, 740 So. 2d 506, 509 n. 5 (Fla. 1999). Therefore, Defendant's ground is denied.

Doc. 12-3, Ex. Q at 8. The First DCA summarily affirmed. Doc. 12-3, Ex. T.

**B.     Land's Claim Does Not Warrant Habeas Relief**

The Eleventh Circuit has questioned whether a claim of cumulative error can ever provide a basis for federal habeas relief. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 & n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law."). Although the Supreme Court has not addressed the applicability of the cumulative-error doctrine in the context of ineffective-assistance-of-counsel claims, the Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (citations omitted).

Land has not shown that the alleged errors of trial counsel discussed above undermine the reliability of the jury's finding of guilt. In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, the state court's rejection of Land's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Land is not entitled to habeas relief on Ground Four.

## IV.  Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.  CONCLUSION

It is **ORDERED** that: The clerk of court shall change the docket to reflect that Ricky D. Dixon has been substituted as the Respondent in this action.

In addition, for the reasons set forth above the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Jennifer Marlaina Land*, Washington County Circuit Court Case No. 2015-CF-284, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Pensacola, Florida, this 23rd day of May, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not**

**<u>control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**